J-S94023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.F.T., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| T.A.B, H.M.B., & C.D.C. | |
| | No. 1312 MDA 2016 |

Appeal from the Order entered July 8, 2016,
in the Court of Common Pleas of York County,
Civil Division, at No(s): 2016-FC-11-03.

BEFORE:  LAZARUS, RANSOM, and FITZGERALD,* JJ.

MEMORANDUM BY RANSOM, J.,                    **FILED MARCH 06, 2017**

Appellant, J.F.T. ("Grandmother") appeals *pro se* from the order entered on July 8, 2016, in the Court of Common Pleas of York County, granting sole legal and primary physical custody of S.D. and K.B. to Appellee, T.A.B. ("Mother").  After review, we affirm.

The pertinent facts and procedural history are as follows:  Mother has two daughters, S.D, born in 2005, and K.B., born in 2007 ("Children"). S.D.'s father is C.D.C., and K.B.'s father is Grandmother's son, H.M.B. Mother and H.M.B. married in 2007, and Mother lived with Grandmother from 2007 until 2009.  At that time, she entered inpatient treatment for her heroin addiction.  During her treatment, Children remained in Grandmother's custody pursuant to a temporary guardianship that Mother and H.M.B. had executed.  When Mother returned from treatment in 2014, she moved in

* Former Justice specially assigned to the Superior Court.

with Grandmother and Children and stayed there for approximately one year.[1]  Mother then moved to York and refused to return Children from her custody following the 2015 December holidays.

In January 2016, Grandmother filed a complaint *pro se* for custody of Children.  A custody trial was held over three days in June 2016.  At the time of trial, Mother had moved in with her paternal aunt and uncle, who had raised her after her father died.  At trial, both Grandmother and Mother appeared with counsel.  H.M.B. and C.D.C. appeared and testified as witnesses for Grandmother but informed the trial court that neither was seeking custody rights.

By opinion and order entered July 8, 2016, the trial court awarded shared legal and physical custody of Children to the parties for the remainder of the summer period.  Beginning August 26, 2016, the trial court awarded Mother sole legal custody and primary physical custody of Children, subject to Grandmother's rights of partial physical custody.  Grandmother filed this timely appeal.  Both Grandmother and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Grandmother raises the following issues for our review:

1. Did [the] Trial Court abuse [its] discretion, commit [an] error of law and/or its record lacks/against [sic] [the] weight of

_____

[1] H.M.B. was incarcerated.

evidence to support the findings of fact/conclusions of law of 23 Pa.C.S. Section 5328(a) (1,2,3,4,7,8,9,10, and 14)?

2. Did [the] Trial Court abuse [its] discretion, commit [an] error of law and/or its record lacks/against [sic] weight of evidence to support the findings of fact/conclusions of law of award of legal, primary and partial physical custody[?]

3. Did [the] Trial Court abuse [its] discretion, commit [an] error of law and/or its record lacks/against [the] weight of the evidence to support the findings of fact/conclusions of law of application of and not bursting [sic] rebuttable presumption of parent over grandparent acting in loco parentis?

4. Did [the] Trial Court abuse [its] discretion, and/or its record lacks/against [the] weight of the evidence to support the findings of fact of age[s] of children?

5. Did [the] Trial Court abuse [its] discretion, commit [an] error of law and/or its record lacks/against [the] weight of [the] evidence to support the findings of fact/conclusions of law of credibility of Mother, Mother's witnesses and Mother's missing witnesses?

Grandmother's Brief at 4-5.   Because each of Grandmother's issues essentially challenges the trial court's consideration of the statutory custody factors, we will address them together.

Our scope and standard of review of an appeal from a custody order is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the

conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**V.B. v. J.E.B.**, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citation omitted).

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

**A.H. v. C.M.**, 58 A.3d 823, 825 (Pa. Super. 2012) (quoting **Ketterer v. Seifert**, 902 A.2d 533, 540 (Pa. Super. 2006)).

If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. **In re Adoption of T.B.B.**, 835 A.2d 387, 394 (Pa. Super. 2003).

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

**S.M. v. J.M.**, 811 A.2d 621, 623 (Pa. Super. 2002) (quoting **Robinson v. Robinson**, 645 A.2d 836, 838 (Pa. 1994)).

The primary concern in any custody case is the best interest of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." **Saintz v. Rinker**, 902

A.2d 509, 512 (Pa. Super. 2006) (citing **Arnold v. Arnold**, 847 A.2d 674, 677 (Pa. Super. 2004)).

Section 5328 of the Child Custody Act sets forth certain factors a trial court must consider in order to determine the best interest of the child when awarding custody. Specifically, Section 5328 provides as follows.

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a)(1)-(16).

Initially, we note that the trial court's July 8, 2016 opinion presented a complete assessment of the 16 best interest factors enumerated in Section 5328(a).[2] **See C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super 2013) (holding

---

[2] The trial court did not discuss separately factor 2.1 and factor 16.

that the trial court must set forth its assessment of the 16 best interest factors outlined in 23 Pa.C.S.A. § 5328(a)). On several occasions during the custody trial, the court emphasized the well-established legal principal that natural parents have a rebuttable presumption against third parties in custody disputes. **See** 23 Pa.C.S.A. § 5327(b) (codifying the then-existing common law presumption). Regarding this presumption, the Child Custody Act states provides:

> **§ 5327. Presumption in cases concerning primary physical custody.**
>
> …
>
> **(b) Between a parent and third party.—**In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence.

**Id.** "The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." **V.B.**, 55 A.3d at 1199 (citation omitted).

Regarding this presumption, we have concluded as follows.

> [O]ur Supreme Court [has] noted that "these principles do not preclude an award of custody to the non-parent. Rather they simply instruct the [trial] judge that the non-parent bears the burden of production and the burden of persuasion and that the non-parent's burden is heavy."

**Id.** (quoting **Ellerbe v. Hooks**, 416 A.2d 512, 514 (Pa. 1980)).

> What the [trial] judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide

- 7 -

whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side.

***V.B.***, 55 A.3d at 1199 (citation omitted).  Further, we recognize that when a grandparent is involved in a custody dispute with a parent, the grandparent is a third party and bears this heightened burden.  ***Id.*** at 1198-99 (citation omitted).

Grandmother asserts that she "presented clear and convincing evidence to burst [the] presumption in favor of Mother against in loco parentis Grandmother for seven years, if not for ten years (since children's birth), in her household."  Grandmother's Brief at 14.  She therefore contends that "the interim status quo [custody arrangement] before trial should have been confirmed and ratified rather than the dramatic paradigm flip, or, in the alternative, at least provide substantial custody [to her]."  ***Id.*** at 15.

As noted above, the trial court considered the sixteen custody factors. The court explained its factual findings and conclusions of law as to each relevant factor as follows:

**(1)   Encouragement of Continuing Contact Between the Other Party**

The Court finds that both parties are likely to encourage and permit continuing contact between Children and the other party.  As such this factor, is neutral.

**(2)   Present and Past Abuse**

- 8 -

The Court finds that there was no significant testimony regarding any present or past abuse by either party. As such, this factor is neutral.

**(3) Parental Duties**

The Court finds that both parties are currently performing parental duties on behalf of Children during their custody time. However, Grandmother had primary physical custody of Children for several years while Mother was dealing with an admitted drug addiction. The Court commends Grandmother for her care of Children over those years. Testimony established that Mother shared in the parental duties for Children during the time that she was living with Grandmother after her recovery. Overall, due to Grandmother's role as primary caregiver to Children during Mother's recovery, this factor weighs slightly in favor of Grandmother.

**(4) Stability in Children's Education, Family Life and Community Life**

The Court finds that both parties are currently able to provide stability and continuity in Children's lives. Testimony established that Mother has had steady employment for several years and now has stable housing with [paternal] aunt and uncle who acted as parental figures to Mother as a teenager after the death of her father. [Paternal] aunt and uncle testified that Mother is allowed to remain in their home with Children indefinitely. Throughout Children's lives, Grandmother has provided consistency and stability while Mother dealt with her drug addiction. The Court believes that Mother has successfully addressed her addiction issues and is able to ensure stability for [C]hildren going forward. As such, this factor is neutral.

**(5) Availability of Extended Family**

The Court finds that both Grandmother and Mother have extensive extended family members who are involved with Children. As such, this factor is neutral.

**(6) Sibling Relationships**

The Court finds that Children have no other sibling relationships. This factor is neutral.

**(7) Well-reasoned Preference of the Children**

The Court interviewed Children *in camera*. Children expressed love for both parties and a desire to spend time with both parties. This factor is neutral.

**(8) Attempt of Party to Turn Children Against Other Party**

The Court finds that there was no direct credible testimony regarding attempts by either party to turn Children against the other party. As such, this factor is neutral.

**(9) Maintenance of Loving and Stable Relationship with Children**

The Court believes that both Grandmother and Mother are able to maintain loving and nurturing relationships with Children. Testimony established the Mother is more consistent with her discipline of Children which benefits their emotional development. As such, this factor weighs slightly in favor of Mother.

**(10) Attendance to Children's Daily Needs**

The Court finds that both parties are capable of meeting Children's daily physical needs but that Mother's current environment provides more stability for Children. Testimony established that, while Grandmother is very dedicated to Children, both her and [her live-in daughter's] work schedules create inconsistency in Children's daily care at Grandmother's residence in that Children sleep at two (2) different residences throughout the week and sometimes share a bed with two (2) minor male cousins. Additionally, there was significant testimony regarding [S.D.] being bullied at her current school while in Grandmother's custody. Therefore, the Court finds that Mother is able to

provide daily stability for Children and this factor weighs in favor of Mother.

**(11) Proximity of Residences**

Grandmother currently resides [in] Hanover, Pennsylvania[.] Mother currently resides [in] Wellsville, Pennsylvania[.] Presently, the parties reside approximately twenty (20) miles apart. This distance is conducive to regular custody exchanges.

**(12) Availability to Care for Child or Make Child Care Arrangements**

The Court finds that both parties are able to care for Children or make appropriate child care arrangements. This factor is neutral.

**(13) Level of Conflict Between Parties and Willingness to Cooperate**

The Court finds that there is a moderate level of conflict between the parties and that they are able to cooperate regarding custody of Children. This factor is neutral.

**(14) History of Drug or Alcohol Abuse**

Mother admitted to a history of drug abuse. The Court believes that she is determined in remaining free of unlawful drugs. There was no credible testimony to contradict Mother's testimony that she has been clean for more than three (3) years. Overall, this factor weighs slightly in favor of Grandmother.

**(15) Mental and Physical Condition of Party or Member of Party's Household**

The Court finds that both parties have conditions which are controlled by medications and do not affect their ability to care for Children. This factor is neutral.

Trial Court's Opinion, 7/8/16, at 6-9.

The fact that the trial court found that a majority of the factors did not weigh in favor of either party readily supports a conclusion that both Grandmother and Mother are fit parties to continue to care for Children. In awarding sole legal and primary physical custody of Children to Mother, the trial court essentially concluded that Grandmother did not meet her heavy burden of overcoming the statutory presumption in favor of Mother. Grandmother's assertion that she "burst" the presumption because a majority of these factors actually weighed heavily in her favor is largely based on her testimony as well as that of her witnesses. Her claims challenge the trial court's credibility determinations and the weight it afforded the custody factors. As noted above, a party cannot dictate the amount of weight the trial court places on evidence. *S.M.*, *supra*.

Our review of the trial court's opinion, together with the certified record in this matter, supports the trial court's custody finding in favor of Mother. Considering the totality of the testimony presented, we conclude that the trial court's finding that Grandmother failed to meet her burden by clear and convincing evidence is reasonable as shown by the evidence of record. *See In re V.B.*, 55 A.3d at 1202 (holding that evidence maternal grandparents presented during custody hearings failed to rebut the presumption of custody in favor of the father).

Accordingly, the trial court did not err in its custody determination. We therefore affirm the July 8, 2016 order granting Mother sole legal and primary physical custody of Children.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/6/2017